Donald E. MEE, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–219.

United States Court of Veterans Appeals.

Argued Jan. 12, 1993.

Decided Feb. 19, 1993.

Roberta L. Valente, for appellant.

John D. McNamee, with whom James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, were on the brief, for appellee.

Before MANKIN, HOLDAWAY and STEINBERG, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant, Donald E. Mee, appeals a decision of the Board of Veterans' Appeals (Board or BVA) which denied service connection for post-traumatic stress disorder (PTSD). Appellant argues that the Board decision should be reversed as the BVA's finding of fact was "clearly erroneous." Appellant asks this Court to grant him service connection for PTSD. The Secretary of Veterans Affairs (Secretary) concedes that the BVA decision contains several errors. However, the Secretary argues that these errors are not grounds for factual reversal, but rather for remand. The Court holds that the facts in the record have been inadequately developed. There is, therefore, an insufficient basis for this Court either to reverse or to affirm the factual findings below. The case will be remanded for readjudication.

BACKGROUND

Appellant had active service between September 1965 and July 1968. He served in Vietnam for two years as a heavy vehicle driver. Appellant claims several events as stressors during his service in Vietnam. First, appellant claims that on his third day in Vietnam, Vietcong attacked and entered the perimeter of Camp Alpha Army Base, where appellant was billeted. Appellant purportedly saw "piles" of Vietcong bodies stacked outside the front gate after the attack subsided. Second, appellant states that while he was driving a truck through a

village outside Qui Nhon, a Vietnamese threw a grenade under his truck. Third, appellant asserts that after switching guard duty with a friend, William Kincaid, shortly before the 1968 Tet offensive, he saw the sky light up in the area where his company was posted. Appellant claims that he later learned that the company had been overrun and that Kincaid had been seriously wounded. He avers that he feels intense guilt for switching places with Kincaid.

After returning from Vietnam, appellant suffered from substance abuse and depression. He states that he started taking drugs after returning from Vietnam because he could not cope with civilian life. Appellant sought treatment for his psychiatric problems at the Department of Veterans Affairs (formerly the Veterans' Administration) (VA) Vietnam Veterans' Outreach Center, in December 1986, and at the VA Medical Center, in August 1987. In June 1988, appellant applied for VA service-connected disability compensation for PTSD.

The VA Regional Office (VARO) requested appellant's service records, and current treatment records. Treatment records obtained by the VARO present varied and conflicting diagnoses. For instance, the Washington State Department of Social and Health Services indicated that Dr. McElhaney, a private psychologist, had supposedly diagnosed appellant with PTSD and depression. In August 1988, a VA psychiatric examination diagnosed appellant with mild PTSD *and* paranoid personality disorder. However, in May 1988, the American Lake VA Medical Center diagnosed appellant with major depression, mixed personality disorder, paranoid personality disorder, and poly drug abuse. On February 15, 1989, the VARO denied service connection for PTSD stating, "[T]here is [sic] no verified life-threatening stressors that would evoke significant symptoms in almost everyone." Appellant filed a Notice of Disagreement and indicated that development with the U.S. Army and Joint Services Environmental Support Group (ESG) had not been initiated prior to the VARO's denial of service connection. On June 6, 1989, the ESG replied that it was able to document only that Kincaid had been a patient in the Casualty Company on January 30, 1968. This document did not show a cause for the patient status, wounds or otherwise. Other incidents described by appellant could not be documented. On August 21, 1989, the VARO confirmed its previous denial of service connection for PTSD.

At a November 7, 1989, personal hearing at the VARO, appellant elaborated on the Vietcong attack at Camp Alpha and his feelings about switching guard duty with Kincaid. Appellant also submitted newspaper articles which purported to corroborate that Camp Alpha had been attacked by rocket or mortar fire, but which did not indicate that Vietcong had penetrated, or even attempted to penetrate the perimeter. The dates he gave for the attack on Camp Alpha were not congruent with the dates of the newspaper articles. The hearing officer continued the denial of appellant's claim for service connection for PTSD.

Appellant then appealed his claim to the BVA. On October 23, 1990, the Board denied service connection for acquired psychiatric disorder, including PTSD. In the "DISCUSSION AND EVALUATION" section of the decision, the Board addressed the varied diagnoses by stating:

It should be noted that the Board is not bound by characterizations made by VA personnel or by others. Although some examiners have assigned a diagnosis of post-traumatic stress disorder, the Board finds that the veteran's psychiatric symptomatology, while consisting of some of the symptoms normally associated with post-traumatic stress disorder, does not, on the whole, meet the requirements for such a diagnosis.

Aside from significant questions with regard to whether there is an adequately demonstrated "stressor" in this case, it is also our view that clinical signs and symptoms have not been elicited such as would otherwise reasonably establish the presence of a stress-related disorder. An established pattern of drug and alcohol abuse in the past also serves to obscure the indicated symptomatology offered as

supportive of a diagnosis of post-traumatic stress disorder.

*Donald E. Mee*, BVA 90–18141, at 5–6 (Oct. 23, 1990). Appellant filed a timely Notice of Appeal.

## ANALYSIS

■ Psychological examinations are regulated pursuant to 38 C.F.R. § 4.126 (1992), which states:

The [mental] disorder will be diagnosed in accordance with the APA [American Psychiatric Association] manual.... Normal reactions of discouragement, anxiety, depression, and self-concern in the presence of physical disability, dissatisfaction with work environment, difficulties in securing employment, etc., must not be accepted by the rating board as indicative of psychoneurosis. Moreover, mere failure of social or industrial adjustment or the presence of numerous complaints should not, in the absence of definite symptomatology typical of a psychoneurotic or psychological factor affecting physical condition, become the acceptable basis of a diagnosis in this field. It is the responsibility of rating boards to accept or reject diagnoses shown on reports of examination. If a diagnosis is not supported by the findings shown on the examination report, it is incumbent upon the board to return the report for clarification.

Although appellant was apparently examined by several mental health experts, he never received a psychological examination in compliance with § 4.126. The reports from several different mental health experts indicate that appellant is presently suffering from at least one psychological disorder. Some of these reports diagnose him with PTSD, while others do not. Moreover, none of these diagnoses differentiates between possible PTSD and such matters as personality disorders or drug abuse that may, or may not, be related to alleged PTSD. If PTSD is found in connection with other non-service-connected mental disorders, an attempt must be made to determine the severity of the PTSD by itself so that a rating that is based solely on the service-connected condition can be fairly assigned. In a similar case, *Bowers v. Derwinski*, 2 Vet.App. 675 (1992), where the facts had been inadequately developed, we remanded for further development of the facts. We will do the same in this case.

■ Furthermore, in its decision, the Board appears to have disregarded the diagnoses of the examiners and instead relied on its own medical judgment. "BVA panels may consider only independent medical evidence to support their findings." *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991); *Paller v. Principi*, 3 Vet.App. 535, 538–39 (1992). Where the Board is skeptical of the medical evidence being offered by the claimant, it is "free to supplement the record by seeking an advisory opinion, ordering a medical examination or ... [quoting] recognized medical treatises in its decisions that clearly support its ultimate conclusions." *Colvin*, 1 Vet.App. at 175; *Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992) (BVA's failure to quote from recognized medical treatises to substantiate its medical conclusion precludes meaningful review by the Court.) Otherwise, as in this case, neither the veteran nor the Court can understand the medical basis for the decision.

■ The Court, additionally, cannot properly review the evidentiary basis of the BVA decision since the Board failed to decide whether appellant had demonstrated adequate stressors. Appellant related in detail several events which would be considered stressful by most people. He has supplied statements from acquaintances, newspaper articles, and ESG morning reports in support of his claim. The Board is required to identify findings crucial to its decision and to determine the credibility of the evidence. *Gilbert v. Derwinski*, 1 Vet. App. 49, 56–57 (1990). This particular BVA decision "is neither helpful to the veteran, nor 'clear enough to permit effective judicial review'." *Id.* at 57. If the Board is of the view that sufficient stressors have not been shown, it must make a finding of fact to that effect and support it with sufficient "reasons or bases."

Finally, the Court is puzzled by the Board's conclusion that appellant did not have PTSD because he did not complain of any symptoms until the late 1980's. PTSD is by definition a delayed reaction. The amount of time between appellant's military service and the initiation of a claim for PTSD is immaterial. *See* VA ADJUDICATION PROCEDURES MANUAL, M21–1, para. 7.46g(4) ("PTSD can occur hours, months, or years after a military stressor. Despite this long latent period, service-connected PTSD may be recognizable by a relevant association between the stressor and the current presentation of symptoms.").

The decision of the Board is VACATED and the matter is REMANDED for action consistent with this opinion. Upon readjudication the BVA should order a psychological examination which complies with 38 C.F.R. § 4.126. A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court no later than 120 days after the date on which that new decision is mailed to appellant.