**Raymond L. SMITH, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–771.**

United States Court of Veterans Appeals.

July 6, 1993.

**336**

Rick Surratt, Washington, DC, was on the briefs, for appellant.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Jacqueline E. Monroe, Washington, DC, were on the brief, for appellee.

Before FARLEY, MANKIN and STEINBERG, Judges.

FARLEY, Judge:

Appellant Raymond L. Smith appeals from a January 3, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which denied his claims of entitlement to service connection for a right knee disability as secondary to his service-connected left knee disability, and to a rating in excess of 10% for postoperative residuals of a left medial meniscectomy (excision of a crescent shaped disk of fibrocartilage attached to the superior articular surface of the tibia, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1005 (27th ed. 1988)) with degenerative joint disease (left knee condition). The Board stated that a preponderance of the evidence did not demonstrate that a causal relationship existed between appellant's service-connected left knee condition and his right knee disorder, and that no more than a slight impairment of the left knee had been shown, thus not warranting an increase in his 10% disability rating. Because the BVA failed to support the determinations made in the January 3, 1991, decision with sufficient reasons or bases, the Court will remand both issues to the Board for readjudication.

## I. FACTUAL BACKGROUND

Appellant served honorably in the United States Air Force from December 12, 1956, until January 15, 1959. R. at 17, 61, 114. The Veterans' Administration (now Department of Veterans Affairs) (VA) Chicago, Illinois, Regional Office (RO) granted service connection for appellant's disability resulting from postoperative residuals of a left medial meniscectomy with degenerative joint disease, and initially evaluated this disability as 0% disabling (noncompensable) from March 1, 1975. *See* R. at 17, 63. On February 2, 1984, after reviewing the results of a December 7, 1983, examination (not of record), which found that "anterior drawer and Lachman tests conducted on appellant's knee were mildly positive, [and] the pivot shift test is grade I/II and patella-femoral crepitus is clearly heard," the RO concluded that appellant's condition had reached a compensable degree of disability,, and evaluated appellant's left knee condition as 10% disabling, effective September 22, 1983. R. at 17. A September 4, 1984, RO decision resulted in an increase in appellant's left knee disability rating to 20%, effective August 9, 1984. R. at 18. On January 1, 1986, the Board denied appellant's claims of entitlement to an effective date for a compensable rating earlier than September 22, 1983, and to a rating in excess of 20% for his left knee condition. R. at 19–25. On March 3, 1987, the Board again denied appellant's claim of entitlement to an increased (compensable) disability evaluation for his left knee condition prior to September 22, 1983. R. at 28–33.

In October 1988, appellant submitted a claim of entitlement to a rating higher than the 20% rating which had been assigned for his left knee condition in September 1984 (*see* R. at 55, 63), and on December 12, 1988, the VA requested that a medical examination be conducted to determine whether appellant's service-connected left knee condition warranted an increased rating. R. at 46. Appellant underwent a VA examination on January 25, 1989, which revealed that appellant's left leg was ¾″ shorter than his right, that his left knee had a full range of motion, that he ambulated without limp or pain, and that his left

knee showed "no effusion, instability, tenderness, Murray drawer apprehension ... [or] quad or calf atrophy." R. at 47.

In February 1988, appellant, through his wife, had submitted a letter which indicated that he had experienced instability problems with his right leg, and that he attributed his right leg instability to his service-connected left knee condition. R. at 48. In his February 1988 correspondence appellant requested that the VA consider his claim for a right knee disability as secondary to his service-connected left knee condition (secondary service connection). *Id.* On April 7, 1989, the RO adjudicated appellant's claims for a higher disability evaluation for his service-connected left knee condition, and for entitlement to service connection for a right knee disability as secondary to his service-connected left knee disability. R. at 55. The RO reviewed private medical records that appellant had submitted which reflected treatment he had received in 1972, 1984–85, and 1988–89 (R. at 1–4, 35–36, 38, 40, 42–45), and determined that appellant's left knee condition had improved. R. at 56. The RO concluded that the improvement in appellant's condition warranted a "decreased evaluation for [appellant's] service[-]connected left knee condition, subject to the provisions of 38 C.F.R. § 3.105(e)." *Id.* In a rating decision of April 7, 1989, the RO reduced appellant's 20% service-connected disability evaluation for his left knee condition to 10%, and denied appellant's claim of entitlement to secondary service connection for his right knee disability. *Id.* In correspondence dated May 23, 1989, the VA informed appellant of the April 7, 1989, rating decision which reduced his service-connected disability rating, and notified him that he would be scheduled to undergo a physical examination in connection with his claims. R. at 57.

On June 6, 1989, appellant filed a Notice of Disagreement (R. at 58), and on June 15, 1989, the RO confirmed the April 7, 1989, decision which had decreased appellant's disability evaluation for his left knee condition from 20% to 10%, and had denied his claim of entitlement to secondary service

connection. R. at 60. The VA issued a Statement of the Case (SOC) on July 19, 1989 (R. at 62–66), and appellant perfected his appeal to the Board on July 28, 1989. R. at 67. On October 2, 1989, appellant testified under oath at the RO, regarding both claims. R. at 69–84. In November 1989, the RO requested that a disability examination be conducted to determine the extent of appellant's left knee disability. R. at 90, 93. When scheduling this examination, the RO requested in writing that the VA examiner render an opinion concerning the issues whether the discrepancy in the lengths of appellant's legs was due to his service-connected left knee disability, and whether appellant's right knee condition was a secondary result of his service-connected left knee condition. *Id.* The VA conducted this examination on December 12, 1989. R. at 91–96.

The December 1989 examination reports revealed the following: no leg length discrepancy, no laxity in the 0 to 125 degree range of motion of appellant's left knee, 0 to 135 degree range of motion of the right knee, slight pain in the medial joints, and minimal evidence of arthritis in appellant's left knee, with no arthritis evident in the right knee. R. at 93 (duplicated at 96). A radiographic report of appellant's knees, hip joints, and pelvis noted mild degenerative changes and indicated that the examination "was otherwise unremarkable." R. at 94. Although specifically requested to do so, the physician conducting the December 1989 examination provided no opinion on the question whether appellant's right knee condition was the secondary result of his service-connected left knee condition. *See* R. at 90, 93. On January 22, 1990, an RO hearing officer confirmed and continued the April 7, 1989, decision which reduced appellant's service-connected left knee disability to 10% and which denied appellant's claim that his right knee condition be awarded service connection as secondary to his left knee condition. R. at 101–02. The VA issued a Supplemental SOC on February 8, 1990 (R. at 98–100), and appellant perfected his appeal to the Board on March 23, 1990. R. at 105–06. Appellant submitted a March 3, 1990, re-

port from Dr. James H. Wilson which stated that the lengths of appellant's legs differ by three-fourths inch, and opined that appellant suffered from osteoarthritis of both knees, and from anterior medial rotary instability of the left knee, with possible internal derangement. R. at 108. After reviewing Dr. Wilson's report, the RO issued a rating decision on appeal which confirmed and continued the April 7, 1989, rating decision. R. at 110.

In the January 3, 1991, decision which forms the basis of this appeal, the Board determined that appellant's right knee disability was not "proximately due to or the result of a service-connected disability," and that the "schedular criteria for a rating in excess of 10 percent have not been met." *Raymond L. Smith*, BVA 91–\_\_\_\_, at 7 (Jan. 3, 1991).

## II. ANALYSIS

### A. Left Knee Condition

■ **(1) 38 C.F.R. § 3.105(e) (1992):** Appellant argues that the April 7, 1989, RO decision which reduced appellant's left knee disability rating from 20% to 10% should be reversed as unlawful. Br. at 13–21. Appellant cites 38 C.F.R. § 3.105(e) as authority in support of his argument that the Board erred in reducing appellant's disability rating without pointing to evidence that his condition had materially improved. Br. at 16–17. However, there is no language requiring a showing of "material improvement" in 38 C.F.R. § 3.105(e):

> Where the reduction in evaluation of a service-connected disability ... is considered warranted and the lower evaluation would result in a reduction ... of compensation payments currently being made, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons. The beneficiary will be notified ... and furnished [with] detailed reasons therefor, and will be given 60 days for the presentation of additional evidence to show that the compensation payments should be continued at their present level.... [I]f additional evidence is not re-

ceived within that period, final rating action will be taken and the award will be reduced or discontinued. . . .

Appellant's argument that the Board erred as a matter of law by reducing his disability rating without demonstrating that his condition had improved materially must fail. As the Secretary of Veterans Affairs (Secretary) stated in his brief, the RO's May 23, 1989, correspondence to appellant that notified him of the rating reduction and explained that he had 60 days in which to submit additional evidence prior to the rating reduction taking effect, complies with the procedural requirements of 38 C.F.R. § 3.105(e).

■ **(2) 38 C.F.R. § 3.344 (1992):** Appellant's argument that appellant's rating was "protected" under 38 C.F.R. § 3.344 is likewise without merit. Section 3.344 prohibits the reduction of ratings "which have continued for long periods at the same level (5 years or more)," on the basis of a single examination which demonstrated material improvement in the service-connected condition. With respect to the applicability of 38 C.F.R. § 3.344(c), appellant urges the Court to follow *Lehman v. Derwinski,* 1 Vet.App. 339 (1991), which construed the five-year time frame of 38 C.F.R. § 3.344 to be a guideline, rather than a mandate establishing an inflexible minimum time interval. *Id.* at 342. *Lehman* is readily distinguishable from appellant's case in that Mr. Lehman's rating had been in effect for four years and either 363 or 364 days, which the Court determined would fit squarely within the five-year time limit if the time period was calculated by "counting days rather than years and taking into account leap years. . . ." *Id.* Moreover, the Court in *Lehman* determined that the first day of the period during which the higher rating was in effect "should have been [two days earlier], the date on which the veteran was first hospitalized. 38 C.F.R. § 3.344(c)." *Id.* In the instant case, appellant's 20% disability rating was in effect for four years, ten months and 22 days when the RO reduced his disability rating to 10%. R. at 56. For the Court to interpret the Secretary's regulation, 38 C.F.R. § 3.344, to construe appellant's

four-year, ten-month, and 22–day rating as equivalent to "5 years or more" would be too much of a stretch. The *Lehman* Court's characterization of the five-year period as a "guideline" in the context of the particularly compelling facts of that case does not compel such an extension on the facts presented here. We therefore conclude that a rating which has been in effect for a period of four years, ten months and 22 days is not commensurate to a rating which has been in effect for "5 years or more."

■ **(3) Reasons or Bases:** Despite appellant's misinterpretation of 38 C.F.R. § 3.344 with respect to his claim of entitlement to a rating in excess of 10% for his service-connected left knee condition, the Board's decision does not include sufficient reasons or bases to support the January 3, 1991, determination that "the schedular criteria for a rating in excess of 10 percent for a left knee disability have not been met." *Smith,* BVA 91–____, at 7. The Secretary's brief, which notes the Board's failure to provide reasons or bases for the denial of appellant's claim, failure to explain statutes and regulations germane to appellant's claim, and failure to discuss and analyze the evidence considered in evaluating the claim, elucidates the shortcomings of the BVA decision. Br. at 8–11. A remand is required in order for the Secretary to have the opportunity to readjudicate appellant's claim, and to provide satisfactory reasons or bases for all findings and conclusions. 38 U.S.C.A. § 7104(d) (West 1991); *see Gilbert v. Derwinski,* 1 Vet.App. 49 (1990); *see also Peyton v. Derwinski,* 1 Vet.App. 282, 285 (1991); *Smith v. Derwinski,* 1 Vet.App. 235, 237 (1991); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169–70 (1991); *Ohland v. Derwinski,* 1 Vet.App. 147, 149 (1991).

### B. Secondary Service Connection for Right Knee Disability

■ A disability which is proximately due to, or the result of a service-connected disease or injury, shall be service connected, and shall be considered part of the

original service-connected condition. 38 C.F.R. § 3.310(a) (1992). In denying appellant's claim of entitlement to service connection for a right knee disability as secondary to his service-connected left knee condition, the Board found that the "preponderance of the evidence shows that there is not a causal relationship between the veteran's service-connected left knee disorder and his right knee disorder." *Smith*, BVA 91-____, at 6.

■ In his brief, the Secretary again, to his credit, points to the segments of the Board's decision which are lacking: adequate reasons or bases supporting the BVA's denial of appellant's claim; a full discussion and analysis of all the evidence in the record applicable to appellant's claim, including an evaluation of the credibility of appellant's testimony; and an explanation for the absence of a medical opinion which the VA had specifically requested in December 1989. Br. at 17–19. The omission of an opinion, specifically requested by the VA, regarding the question whether appellant's right knee condition was secondarily related to his service-connected left knee disability, is particularly disturbing. *See* R. at 90, 93. The absence of such an opinion from the record indicates that the Secretary and the Board have neglected their duty to assist appellant in the development of his claim. *Pritchett v. Derwinski*, 2 Vet.App. 116 (1992); *Dyess v. Derwinski*, 1 Vet.App. 448 (1991); *Littke v. Derwinski*, 1 Vet.App. 90 (1990); 38 U.S.C.A. § 5107(a) (West 1991); *see Murphy v. Derwinski*, 1 Vet.App. 78, 81–82 (1990); *Hyder v. Derwinski*, 1 Vet. App. 221, 224–25 (1991); *Green v. Derwinski*, 1 Vet.App. 121, 123–24 (1991); *Ivey v. Derwinski*, 2 Vet.App. 320, 323 (1992); *Murincsak v. Derwinski*, 2 Vet.App. 363, 372–73 (1992). In *Green*, 1 Vet.App. at 124, this Court noted that the statutory duty to assist specifically "includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one." In *Green*, the Court also held that where the record before the BVA was inadequate, a remand

to the RO was required. *Id.; see* 38 C.F.R. § 9.9 (1992). Here, because an examining physician did not render an opinion, as requested, regarding the question whether appellant's right knee disability was the secondary result of his service-connected left knee disability, the medical evaluation cannot have been "a fully informed one" as the Court deemed necessary in *Green, supra,* therefore necessitating a remand. Upon remand, the Secretary will schedule appellant to undergo an examination in order to resolve the question of secondary service connection, will readjudicate appellant's claim, and will provide sufficient reasons or bases for all findings and conclusions consistent with 38 U.S.C.A. § 5107 and this Court's decision in *Gilbert, supra.*

### III.  CONCLUSION

The Court VACATES the January 3, 1991, Board decision and REMANDS the matter for readjudication consistent with this opinion. "A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991).