James E. TALLEY, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–359.

United States Court of Veterans Appeals.

Dec. 9, 1993.

Mark Caldwell, Phoenix, AZ, was on the brief for appellant.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Paul J. Hutter, Washington, DC, were on the pleadings for the appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Judges.

NEBEKER, Chief Judge:

Appellant, James E. Talley, appeals a March 3, 1992, decision of the Board of Veterans' Appeals (BVA or Board), which denied service connection for multiple sclerosis (MS). The Board found that MS was neither shown to have been present during service, nor to have manifested to a compensable degree within seven years following service.

Furthermore, the Board determined that the greater weight of the evidence established that symptoms of MS first appeared in 1981, well over seven years after appellant's separation from service. In his appeal, appellant contends that the BVA erred in finding that symptomatology, attributable to MS, was not shown within seven years following service. The Secretary filed a motion for summary affirmance and appellant filed a reply brief in opposition to the Secretary's motion. We hold that the Board erred in basing its decision on its own medical judgment in lieu of independent medical evidence, and that the Secretary failed to fulfill the duty to assist the veteran in developing his claim. Accordingly, the Secretary's motion for summary affirmance is denied, the BVA decision on appeal is vacated, and the case is remanded to the BVA for further adjudication consistent with this Court's opinion.

## I. BACKGROUND

Appellant has qualifying military service from April 1966 through March 1968. R. at 19. In December 1981, Dr. Erlbaum, a private physician, diagnosed appellant with MS. R. at 49. With his claim, appellant submitted private medical records dated from March 1971 to July 1976 (from an unknown physician), which evidenced his complaints of blurred vision and vertigo. R. at 64–68. On September 10, 1990, the Regional Office (RO) denied service connection for the malady.

On appeal, the Board remanded the case to the RO with directions to obtain (1) medical treatment records between 1968 and early 1975, (2) the name of an unknown physician who treated appellant in March 1974, and (3) the treatment records of Dr. Siegal, to whom appellant was referred in April 1974 by the unknown physician. R. at 66, 91–93. After remand, the VA obtained private medical records from Dr. Gaffield, the previously unknown physician. Dr. Gaffield's medical records opined that although appellant's blurred vision and vertigo could be the result of a concussion, it was "very plausible to recognize these now as early symptoms of his MS." R. at 143. On March 3, 1992, the BVA denied service connection for MS on the grounds that there was nothing to suggest

that the symptomatology reported by appellant was attributable to MS, and that the greater weight of the evidence revealed the onset of the disease in 1981. Appellant appeals that BVA decision to this Court.

## II. ANALYSIS

### A. Duty to Assist

■ In a well-grounded claim, as this one is, the burden is on the Secretary to assist the veteran in developing "*all* relevant facts, not just those for or against the claim," *Ivey v. Derwinski*, 2 Vet.App. 320, 322 (1992), and "to seek *medical evidence* either to verify or not verify the claim." *Obert v. Brown*, 5 Vet.App. 30, 33 (1993).

■ Contrary to the 1991 remand decision of the BVA directing the RO to obtain Dr. Siegal's medical records, these records were apparently neither obtained by the RO nor considered by the BVA in its 1992 decision. Although it is unclear whether Dr. Siegal's medical records will resolve the present ambiguity as to entitlement to service connection, they are needed for a fully informed BVA decision. *See Smith v. Brown*, 5 Vet. App. 335, 340 (1993) (statutory duty to assist "includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of *prior medical treatment*, so that the evaluation of the claimed disability will be a fully informed one") (emphasis added); *White v. Derwinski*, 1 Vet.App. 519 (1991).

In the present case, the record on appeal is deficient in that it lacks potentially relevant, specific, and pertinent evidence which could reveal information essential to the determination whether relief can be granted to appellant. Accordingly, the RO should have sought to obtain Dr. Siegal's medical records at the request of the BVA and, in failing to do so, breached its duty to assist appellant in developing his claim for service connection for MS and thereby prejudiced the veteran. *See Ivey*, 2 Vet.App. at 323; *Masors v. Derwinski*, 2 Vet.App. 181, 187–88 (1992) (BVA's duty to assist veteran includes duty to obtain private medical records); *see also* 38 U.S.C.A. § 5107(a) (West 1991). At a minimum, the VA must explain its failure to obtain the records sought. *Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991).

### B. Reasons or Bases

■ Pursuant to 38 U.S.C.A. § 7104(d)(1) (West 1991), the BVA is required to provide an adequate statement of the reasons or bases for its findings and conclusions. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990). When such findings and conclusions are medical in nature, the Board may not rely on its own unsubstantiated medical conclusions, but "may consider only independent medical evidence to support [its] findings." *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991).

■ For MS to be considered service connected, it must be incurred in or aggravated by active service, or manifested to a 10% degree within seven years after the date of separation from service. 38 U.S.C.A. §§ 1110, 1112(a)(4) (West 1991); 38 C.F.R. §§ 3.307(a)(3), 3.309(a) (1993). In the Board's decision, it concluded that "[t]here is nothing to suggest that the symptomatology reported by the appellant to have occurred during this period [March 1971], including vision problems, dizziness, loss of balance and other symptoms, was attributable to MS." *James E. Talley*, BVA — – —, at 5 (Mar. 3, 1992). Furthermore, the BVA determined that "symptomatology attributable to MS first appeared in 1981, over seven years after the appellant left military service." *Id.* at 2–3. These findings by the BVA are medical in nature. Furthermore, these findings directly conflict with the medical opinion of Dr. Gaffield, who stated it was "very plausible" that the symptom complex appellant experienced in the early 1970's was a manifestation of MS. "The Board may not simply reject the medical opinions given, equivocal though they may be, by using its own medical judgment." *Obert*, 5 Vet.App. at 33. The BVA decision does not cite medical evidence of record or recognized medical treatises to support its conclusions. As stated in *Colvin*, 1 Vet.App. at 175:

BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the

BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions.

The Board's contrary and unsupported medical findings cannot stand, as they fail to comply with the 38 U.S.C.A. § 7104(d)(1) statutory requirement that the BVA provide "an analysis of the credibility or probative value of the evidence submitted by and on behalf of the veteran" and "account for the evidence which it finds to be persuasive or unpersuasive." *Gilbert*, 1 Vet.App. at 57–59.

### III. CONCLUSION

The Secretary's motion for summary affirmance is DENIED, the March 3, 1992, BVA decision VACATED, and the matter is REMANDED to the Board for further adjudication consistent with this opinion.